# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**RANDALL ROYER,**          )

                           )

          **Plaintiff,**       )

                           )

**v.**                      )       **Civil Action No. 1:10-cv-01996 (RCL)**

                           )

**FEDERAL BUREAU OF PRISONS,**   )

                           )

          **Defendant.**     )

## DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The Federal Bureau of Prisons ("BOP" or "Bureau" or "Defendant"), a component of the United States Department of Justice ("Defendant" or "Justice"), through and by undersigned counsel, hereby submit this Motion to Dismiss or for Summary Judgment pursuant to Rule 12(b)(1) and 12(b)(6), and Rule 56 of the Federal Rules of Civil Procedure, on the grounds that Plaintiff has failed to state a claim upon which relief can be granted, this Court lacks subject matter jurisdiction, and Defendant is entitled to Summary Judgment as a matter of law.  There are no disputes of material fact.  Accordingly, dismissal or summary judgment is appropriate.

In support of this motion, Defendant respectfully refers the Court to the accompanying, Memorandum of Points and Authorities, declarations, and <u>Vaughn</u>[1] Index.[2]  A proposed Order consistent with this Motion is attached hereto.

Dated: June 1, 2012                    Respectfully submitted,

                                       RONALD C. MACHEN JR.
                                       UNITED STATES ATTORNEY
                                       D.C. BAR NUMBER 447889

                                       DANIEL F. VAN HORN, D.C. Bar # 924092
                                       Acting Civil Chief

                         By:    _____/s/_____
                                       RHONDA L. CAMPBELL, D.C. Bar No. 462402
                                       Assistant United States Attorney
                                       Civil Division
                                       555 4th Street, N.W.
                                       Washington, D.C.  20530
                                       (202) 514-9519
                                       Rhonda.campbell@usdoj.gov

                                       Counsel for Defendant United States

---

[1] <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).

[2]  Plaintiff should take notice that any factual assertions contained in the declarations and other attachments in support of Defendant's motion may be accepted by the Court as true unless the Plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the Defendant's attachments.  See <u>Neal v. Kelly</u>, 963 F.2d 453 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e).

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RANDALL ROYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:10-cv-01996 (RCL)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendant** | ) | |

## STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

Defendant, the Federal Bureau of Prisons ("BOP" or "Bureau"), in accordance with Local

Rule 7(h), submits the following statement of material facts as to which there is no genuine issue:

### The Classification of the Plaintiff as a "Terrorist Inmate"

1.      Plaintiff is presently confined at the Administrative Maximum Security Facility ("ADX")

located in Florence, Colorado, serving a 240 month sentence imposed by the District Court in the

Eastern District of Virginia ("EDVA") for violating 18 U. S.C. §§ 924(c)(2) and 3238, Aiding and

Abetting the Use and Discharge of a Firearm During and in Relation to a Crime of Violence (Felony)

and 18 U.S.C. §§ 18 U. S. C. 811  (h)(2) and 2 and 3238, Aiding and Abetting the Carrying of an

Explosive During the Commission of a Felony, which may be prosecuted in the United States.

Complaint ("Compl.") ¶ 13.

2.      After his conviction, Plaintiff was initially confined at FCI Allenwood.  Compl. ¶ 77.  From

December, 2006, to October 2009, Plaintiff was confined at the Communications Management Unit

at FCI Terre Haute. Compl.¶ 91.   In October 2009, Plaintiff received an incident report for

involvement in an altercation, and to separate him from the other inmates involved, Plaintiff was

transferred to FCI Greenville pending his transfer to another facility. Compl. ¶ 100. Since March,

2010, Plaintiff has been confined at the Florence, Colorado ADX.  See Electronic Filing System ("ECF"), Plaintiff's address of record.

3.       When classifying an inmate committed to the custody of the BOP, staff from the BOP use available information to determine suitable designation and programming needs of the inmate. Declaration of David Schiavone ("Schiavone Decl.") ¶ 5.  One source of information is the PSR adopted by the sentencing court.  Schiavone Decl. ¶ 5.  Additionally, the Bureau may use prior incarceration history of the inmate, information obtained by intelligence gathering regarding the inmate, and any public or non-public information that will assist Bureau staff to appropriately classify an inmate to meet the inmate's programming needs, and for the secure and orderly management of Bureau facilities.  Schiavone Decl. ¶ 5.

4.       The Bureau of Prisons is not in possession of the draft PSR as alleged by Plaintiff, nor has the Bureau ever had possession of the draft PSR.  Schiavone Decl. ¶ 6.  The BOP has not used information from a draft PSR in the classification of Plaintiff or to determine any programming needs of Plaintiff.  Schiavone Decl. ¶ 6.

5.       The Bureau has identified Plaintiff as an offender with a history of/or nexus to international terrorism based on information contained in the PSR adopted by Plaintiff's sentencing court. Schiavone Decl.¶ 7.  Specifically, the offense conduct listed in the PSR included significant communication and association with Lashkar-e Tayyiba (LT) (Army of the Righteous), a group designated as a Foreign Terrorist Organization ("FTO") by the U.S. Department of State, which is reported on the U.S. Department of State's web site.  Schiavone Decl.¶ 7.

6.       Plaintiff's PSR includes self-admissions by Plaintiff to training and fighting with a group in Bosnia known as "Abu Zubair, II," a group also known as Abu Zubair al Madani, which according

2

to publicly available information, is associated with al Qaeda, and identified as a FTO. Schiavone Decl. ¶ 7. This information is available to a member of the general public from governmental web sites, media outlets, educational sources, and information from private or public agencies. Schiavone Decl. ¶ 7.

7.     In addition to the PSR, in classifying Plaintiff, the BOP used several publicly available records to research Abu Zubair: Those sources were:

a.     www.justice.gov/usao/iln/prichicago/2002/pr1009_01.pdf, a link to a press release issued by the Office of the United States attorney for the Northern District of Illinois;

b.     www.justice.qov!usao/ihilindict/2002/02cr892.pdf, a link to a copy of an indictment returned by a grand jury in the Northern District of Illinois;

c.     www.historycommons.org/entity.jsp? entity=abu zubair_al_madani=1, a link to a web site describing Abu Zubair al Madani; and

d.     www.iustice.gov, Department of Justice's public web site. Schiavone Decl. ¶ 8.

## Plaintiffs Requests Under The FOIA and the Privacy Act

8.     On June 2, 2009, Plaintiff submitted a letter to the Bureau's Freedom of Information Act ("FOIA")/Privacy Act ("PA") Section requesting: 1) a copy of the alleged draft PSR used by the Bureau and any documents associated therewith; 2) a copy of the record derived from "open source reporting,"; 3) any documentation containing the name of the records system containing the records pertaining to item 1 and item 2; 4) a copy of all communication directly or indirectly related to his February 4, 2009, inmate request to staff member; and 5) any documents related to the name and position of the Bureau's Central office employee, who provided information contained in the February 5, 2009, response to Plaintiff's request. See Exhibit ("Exh.") No. 2, attached to Lynn

Tufte's Declaration ("Tufte Decl.").

9.      Upon receipt of the June 2, 2009, request (assigned No. 2009-08352), a search was conducted in the Correctional Programs Division ("CPD"), and in the records maintained by Case Manager Fortune to locate documents relating to Plaintiff's request.  Tufte Decl. ¶ 7.  The CPD and Case Manager Fortune's files were identified as the most reasonable and likely locations to contain responsive records.  Tufte Decl. ¶ 7.  The search results by CPD and Case Manager Fortune located eight (8) pages of responsive records.  Tufte Decl. ¶ 7.

10.     In a letter dated July 8, 2009, Plaintiff was advised by the Bureau that no records were located related to a draft PSR or  from "open source reporting".  Tufte Decl. ¶ 8.  Additionally, since no records were located responsive to these two items, no system of record could be identified.  See Exh. No 3, attached to Tufte's Decl.  Plaintiff was also advised that eight (8) pages were located and processed related to his inmate request to staff members.  See Exh. No 3.  Of the eight pages, three (3) pages were released in their entirety, and five (5) pages were released with redactions.  See Exh. No 3. Initially, Exemption 5 U.S.C. §552(b)(5) and Exemption 5 U.S.C. § 552(b)(7)(C), were utilized, however; after discussions with the Office of Information Policy ("OIP") regarding Plaintiff's appeal, information originally withheld under Exemption b(5) was released to Plaintiff.  Tufte Decl. ¶ 8.  OIP affirmed the withholding of information under Exemption (b)(7)(C).  Id.  Exemption (b)(7)(C) was utilized to protect the identity of intelligence officers.  Exh. No. 8 at p. 1.  Justification for withholdings are contained in the Vaughn Index filed in camera.  See Exh. No. 8.

11.     On July 27, 2009, the Bureau's FOIA/PA Section received a PA request from Plaintiff, and it was assigned No. 2009-10012.  Tufte Decl. ¶ 9.  Plaintiff requested to amend records maintained

by the Correctional Programs Divisions ("CPD") and/or Counter Terrorism Unit ("CTU")[3] pursuant to Title 5 of the U.S.C. § 552a(d)(2).  Tufte Decl. ¶ 9.  Specifically, Plaintiff requested an amendment of all records systems, which contained any reference to his alleged association with a "Bosnian terrorist group," and any other records derived from any of the paragraphs deleted by his sentencing court from the draft Pre-Sentence Report (PSR).  Compl. ¶ 55.

12.      In a letter dated August 19, 2009, Plaintiff was advised that under the PA, he could not request  corrections to his record, and that in accordance with the Bureau's policy and Program Statement 1330.13, Administrative Remedy Procedure for Inmates, he could seek formal resolution of a complaint, which relates to any aspect of his imprisonment, including the accuracy of his records, under the Administrative Remedy Procedure.  Exh. No. 5, BOP Ltr. dated August 19, 2009; Tufte Decl. ¶ 10.

13.      On July 27, 2009, the Bureau's FOIA/PA Section received a FOIA request from Plaintiff, which sought copies of all records maintained on him by the Bureau's CTU.  See Exh. No. 6.  This request was assigned No. 2009-10459. Tufte Decl. ¶ 11.  Additionally, Plaintiff requested all records maintained by CTU and/or CPD in preparing the "Notice of Inmate of Transfer to Communication Management Unit" related to Plaintiff.  Tufte Decl. ¶ 11.

14.      Upon receipt of the July 27, 2009, request, a search was undertaken to determine the location of documents relating to Plaintiff's request.  Tufte Decl. ¶ 11.  CPD staff were contacted to search for any responsive records.  Tufte Decl. ¶ 11.

15.      On August 25, 2009, the CTU within the Intelligence and Counter Terrorism Branch located all of the responsive records which were in electronic form.  Tufte Decl. ¶ 11.  Additionally, the

---

[3]  The Intelligence and Counter Terrorism Branch is within the CPD.  Tufte Decl. ¶ 11.

North Central Region (NCR) staff located two (2) pages responsive to item #2 of his request.  Tufte Decl. ¶ 11.  This search was reasonably calculated to uncover all relevant documents, as these two searches were conducted by the offices within the BOP most likely to contain any responsive records.  Tufte Decl. ¶ 11.

16.     In a letter dated September 30, 2009, Plaintiff was advised that the records he sought were maintained in a Privacy Act system of records that has been exempted from the access provisions of the PA by the Director of the Bureau pursuant to 5. U.S.C. 552a(j).  Tufte Decl. ¶ 12; Exh. No. 7.  Thus, Plaintiff was denied access to the records under the PA.  Exh. No. 7.  The letter also advised Plaintiff that under the provisions of FOIA, staff located one DVD of electronic records, which were nine (9) folders of records responsive to item #1 of his request and two (2) pages of records responsive to item #2 of his request. Exh. No. 7.

17.     In response to item #1 of the request, Folder #4 was released in part.  Tufte Decl. ¶ 13.  The remaining eight (8) folders were withheld in their entirety.  Tufte Decl. ¶ 13.  Plaintiff was advised that one of the non-released folders contained a copy of his PSR, which Plaintiff is not allowed to possess pursuant to Bureau Program Statement 1351.05, which prohibits inmates from possession of their PSR.   Tufte Decl. ¶ 13.  Rather, an inmate may review their PSR by contacting a member of his or her unit team, as the PSR is contained in the inmate's Central File.  Tufte Decl. ¶ 13.  Related to item #2 of the request, two pages were released to the Plaintiff in their entirety, but the remaining records were exempted from release pursuant to the following exemptions and reasons:

        a.      5 U.S.C. § 552(b)(5) which allows deletion of inter- or intra-agency communications which would not be available to a party other than a party in litigation with the agency was utilized to protect such information;

b.      5 U.S.C. § 552(b)(7)(C) which allows protection of information the disclosure of which would constitute an unwanted invasion of personal privacy was utilized to protect the identity of intelligence officers and identities of third party individuals named in the records;

c.      5 U.S.C. § 552(b)(7)(E) which allows the protection from disclosure of investigative techniques and procedures was utilized to protect the law enforcement intelligence analysts' techniques and procedures because disclosure of the information analysts deemed relevant or meriting consideration could assist criminals in evading communication monitoring techniques employed by the BOP;

d.      5 U.S.C. § 552(b)(7)(F) which allows withholding of information the disclosure of which could reasonably be expected to endanger the life or physical safety of any individual was also invoked due to the complexity and sophisticated abilities of inmates, especially those identified and located in the Communication Management Unit (CMU).  These inmates have demonstrated the ability to misuse/abuse approved communication methods while incarcerated.  Release of this information could facilitate circumvention of monitoring and facilitate criminal activity, and thus jeopardize the lives of inmates and the public by hindering the Bureau's ability to monitor criminal activity and maintain security, safety and orderly running of a correctional institutions and ensure the public's safety.  Tufte Decl. ¶ 13.

18.     The specific documents or portions of documents withheld and the reason for that withholding are contained in the <u>Vaughn</u> Index filed herewith.  Tufte Decl. ¶ 13.  The <u>Vaughn</u> Index describes with particularity the documents and all meaningful information contained therein insofar as the description would not reveal the very information for which protection from disclosure is asserted.  Tufte Decl. ¶ 13.

Dated: June 1, 2012                      Respectfully submitted,

                                         RONALD C. MACHEN JR.
                                         UNITED STATES ATTORNEY
                                         D.C. BAR NUMBER 447889

                                         DANIEL F. VAN HORN, D.C. Bar # 924092
                                         Acting Civil Chief

                      By:     _____/s/_____
                                         RHONDA L. CAMPBELL, D.C. Bar No. 462402
                                         Assistant United States Attorney
                                         Civil Division
                                         555 4th Street, N.W.
                                         Washington, D.C.  20530
                                         (202) 514-9519
                                         Rhonda.campbell@usdoj.gov

                                         Counsel for Defendant United States

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RANDALL ROYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:10-cv-01996 (RCL)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS AND**
**FOR SUMMARY JUDGMENT**

**I.     Introduction**

        This is an action against the Bureau of Prisons ("BOP"), an agency of the United States

Department of Justice.  Plaintiff speculates that the BOP obtained his unredacted copy of the draft

Pre-Sentence Report ("PSR")[1] prepared by the District Court for the Eastern District of Virginia's

("EDVA") Probation Office after his conviction, and that the BOP used the information that was

later stricken by the Court to classify him as a "terrorist inmate."  See Compl. ¶¶ 2-4.  Specifically,

Plaintiff points to portion of the draft PSR, which states, "Abu Zubair (known more formally as Abu

Zubair al Madani) was a member of Al Qaeda sent to Bosnia by Bin Laden to establish camps for

Al Qaeda." "Abu Zubair" is a group in Bosnia.  (Declaration of David Schiavone ("Schiavone Decl.)

¶ 4).

        Notably, Plaintiff admits that "[t]he final adopted version of the PSR, redacted by the Court

[in the EDVA] is maintained by the BOP in Plaintiff's 'Central File' [located] in the BOP's Inmate

Central Records System. The file is under the control of a Correctional Counselor assigned to

---

        [1]  The draft PSR contained information stricken from the final PRS adopted by the Court in
the EDVA.  See Complaint ("Compl.") ¶¶ 13-22.

Plaintiff at the institution in which he is confined.  Plaintiff makes no allegation in this complaint that the final adopted version of his PSR in his Central File is inaccurate."  Compl. ¶25.  In any event, as a court document, the PSR is not within the purview of either the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, notwithstanding its use or retention by agencies such as the BOP. See FDIC v. Ernst & Ernst, 677 F.2d 230 (2nd Cir. 1982); Cook v. Willingham, 400 F.24 885 (10th Cir. 1968).  Plaintiff alleges that the BOP's classification of him as a terrorist inmate resulted in the imposition of harsh atypical restrictions on his conditions of confinement relative to those of ordinary prisoners, including the limitations on telephone use, total ban on physical contact with his family, total sequestration from the general prison population, limiting his group prayer, a total ban on group religious study, and severe limitations on his educational and employment opportunities.  See Compl. ¶ 4.

Plaintiff claims violations of the Freedom of Information Act ("FOIA")/Privacy Act ("PA"), (Compl. ¶¶ Counts 1-9), and violations of  his rights under the United States Constitution. Compl. ¶¶ Counts 10 and 11.  Plaintiff's claims are without legal merit and his complaint should be dismissed.

## II.    Background

Defendant hereby incorporates the Statement of Material Facts Not In Genuine Dispute, filed contemporaneously with this Memorandum.

## III.    Argument

Plaintiff's central complaint is that the BOP received a copy of the unredacted draft PSR and used the information in that draft report to determine Plaintiff's incarcerated status.  Plaintiff's claims lack legal as well as factual merit.

2

A.      **Standard for Summary Judgment**

FOIA cases are typically and appropriately decided on motions for summary judgment. See,

e.g., Wheeler v. U.S. Dep't of Justice, 403 F. Supp. 2d 1, 5-8 (D.D.C. 2005).

Where no genuine dispute exists as to any material fact, summary judgment is required.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that

would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party may be

discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence

to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833

F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations,

but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, the

Plaintiff must present some objective evidence that would enable the court to find he is entitled to

relief.  In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion

for summary judgment, the party who bears the burden of proof on an issue at trial must "make a

sufficient showing on an essential element of [his] case" to establish a genuine dispute.  477 U.S.

317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment is

appropriate:

> If the evidence is merely colorable, . . . or is not significantly
> probative, . . . summary judgment may be granted . . . [T]he mere
> existence of a scintilla of evidence in support of the Plaintiff's
> position will be insufficient; there must be evidence on which the jury
> could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[2]  See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure.  Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and Plaintiff with affidavits or declarations which show that the documents are exempt from disclosure.  Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case

---

[2]  For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union LLC v. Federal Trade Commission, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also Public Citizen, Inc. v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000); McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995); Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991).  When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant.  Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

## B.   Standard for Dismissal

### 1.   Lack of Subject-Matter Jurisdiction

On motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. Monument Reality LLC v. Wash. Metro. Area Transit Auth., 535 F. Supp. 2d 60, 67 (D.D.C. 2008).  Because subject-matter jurisdiction is "an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court." Akinseye v. Dist. of Columbia, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)).  The Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional

authority," Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), and in doing so may "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case," Sweeney v. Am. Registry of Pathology, 287 F. Supp. 2d 1, 3 (D.D.C. 2003) (construing Herbert and quoting Scolaro v. Dist. of Columbia Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000)).   Applying these standards demonstrates that Plaintiff's Complaint should be dismissed.

## 2.      Failure to State a Claim upon Which Relief Can Be Granted

On motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court will dismiss a claim if the complaint fails to plead "enough facts to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), abrogating Conley v. Gibson, 355 U.S. 41 (1957).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Although "[d]etailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Martin v. Arc of Dist. of Columbia, 541 F. Supp. 2d 77, 81 (D.D.C. 2008) (quoting Twombly, 550 U.S. at 555).  The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," or must be sufficient "to state a claim for relief that is plausible on its face." Id.  "Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal citations and quotation marks omitted). The court "need not accept inferences unsupported by facts in the complaint, nor must the court accept [Plaintiff's] legal conclusions." Id. (citing Kowal v. MCI Comm'cns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## C.  The Agency Conducted a Reasonable Search for Records.

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records. Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993); Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  Oglesby, 920 F.2d at 68.  Consistent with the reasonableness standard, the adequacy of the search is "dependent upon the circumstances of the case."  Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

The Tufte Declaration ("Tufte Decl.")(attached to this memorandum) describes BOP's search methods using the Bureau's computerized datebase for FOIA/PA, which is called E-Works.  Tufte Decl. ¶ 3.  The BOP also accessed the Bureau's official computerized records called Sentry to access inmate files.  Tufte Decl. ¶ 3.  Additionally, the BOP accessed records in the Correctional Programs Division ("CPD"), the Counter Terrorism Unit ("CTU"), and those records maintained by Plaintiff's case manager, Lynn Fortune.  Tufte Decl. ¶ 7.  All systems and files were adequate and proper to search for responsive materials because they are the mostly likely databases to search and find records pertaining to Plaintiff's requests.  See Tufte Decl. ¶¶ 3, 5, and 7.

D.    **BOP's Withholdings Were Appropriate**

To prevail on summary judgment in a FOIA action, an agency must demonstrate that it

has met its burden of showing that the information it has withheld from disclosure is exempt and

that the agency has adequately segregated non-exempt materials.  See 5 U.S.C. § 552(a)(4)(B),

(b); see also Mead Data Ctr., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977)

("FOIA places the burden of justifying nondisclosure on the agency seeking to withhold

information."); Billington v. DOJ, 233 F.3d 581, 586 (D.C. Cir. 2000) (discussing the "segregability

requirement").  An agency may satisfy this burden by providing "a relatively detailed justification

through the submission of an index of documents, known as a Vaughn Index, sufficiently detailed

affidavits or declarations, or both."  Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade

Representative, 237 F. Supp. 2d 17, 22 (D.D.C. 2002) (citation and quotation marks omitted).

In support of its motion for summary judgment, BOP has produced a comprehensive

Vaughn[3] Index, which identifies the exemptions claimed for each document.  See Vaughn Index,

Exhibit ("Exh.") No. 8;[4] see also Morley v. CIA, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (noting that

a Vaughn index and other agency documents may "work [ ] in tandem" to justify withholdings).

With respect to Plaintiff's June 2, 2009, FOIA request, after a search was conducted

---

[3] Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F.Supp. 23, 35 (D.D.C. 1997), aff'd, 172 F.3d 919 (D.C. Cir. 1998). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d Cir. 1988).

[4] Although the Vaughn Index cites 5 U.S.C. § (b)(2) (high) to the exempt materials, Defendant will not make any arguments using this exemption due to recent U.S. Supreme Court decision in Milner v. Dep't of the Navy, —— U.S. ——, 131 S.Ct. 1259, 1268 (2011).

(Declaration of LeeAnn D. Tufte ("Tufte Decl.) ¶ 7), the BOP found no records that were responsive to Plaintiff's request for a draft PSR (Item Nos. 1 and 3)(Tufte Decl. ¶ 8), and the BOP found no records responsive to Plaintiff's request for copies of the records from "open source reporting (Item Nos. 2 and 3). Tufte Decl. ¶ 8. The BOP released eight (8) pages, in full, and five (5) pages, in part related to Item Nos. 4 and 5. Tufte Decl. ¶ 8. The exempt records were withheld pursuant to FOIA Exemptions (b)(7)(c).[5] Id. The withholding of this information was entirely appropriate. Moreover, in carefully redacting and releasing five (5) pages in part (Tufte Decl. ¶ 8), BOP disclosed all reasonably segregable, non-exempt portions of the records that it reviewed.

Here, the Vaughn index and Tufte Declaration explain that the BOP invoked Exemption 7(C) only for the withholdings of the names of the "intelligence officers" and other information pertaining to government employees (law enforcement officers). Tufte Decl. ¶ 8. Accordingly, the Court should uphold Exemption 7(C) withholdings.

With respect to Plaintiff's July 20, 2009, FOIA request (received on July 27, 2009),[6] after a reasonable and adequate search was conducted (Tufte Decl. ¶ 11), the BOP located nine (9) folders of records responsive to Plaintiff's first request ("July 20, 2009, ITEM NO. 1"), request, and two (2) pages responsive to Plaintiff's second request ("July 20, 2009, ITEM NO. 2").[7] Tufte Decl. ¶ 12;

---

[5] Initially, the BOP redacted five (5) pages under exemption (b)(2), but after appeal, BOP released five (5) pages under exemption (7)(C) only.

[6] Plaintiff's July 20, 2009, FOIA request sought: 1) copies of all records maintained on Plaintiff by the Bureau's Counter Terriorism Unit ("CTU"); and 2) all documents generated by the CTU and the Correctional Programs Division concerning the decision to place Plaintiff in the Communications Management Unit ("CMU"). See Exh. No. 6, Royer letter dated July 20, 2009, attached to Tufte Decl.

[7] With respect to July 20, 2009, ITEM NO. 2, the BOP released the responsive documents (two (2) pages) in their entirety. (Exh. No. 4, Amended Ltr.dated July 20, 2009).

see also Exh. No. 7, BOP letter to Royer dated September 30, 2009.

## July 20, 2009, ITEM NO. 1

In response to this item, BOP released one (1) folder, in part, and withheld, in their entirety the remaining eight (8) folders.  The exempted records in the folders contained a copy of Plaintiff's PSR, (pursuant to Bureau Program Statement 1351.05, inmates are prohibited from possessing, but not reviewing their PSRs), information and intelligence related to monitoring Plaintiff while incarcerated, and correspondence to and from Plaintiff.  Exh. No. 8.  The exempt records were withheld pursuant to FOIA Exemptions (b)(5), (b)(7)(C), (b)(7)(E), (b)(7)(F).

**1.     Exemption 5 -- Deliberative Process Privilege.**

Exemption (b)(5) covers information that would not be subject to discovery in civil litigation generally due to the application of a recognized privilege.  5 U.S.C. § 552(b)(5).  Exemption 5 encompasses the deliberative process privilege, which protects from disclosure documents that would reveal an agency's deliberations prior to arriving at a particular decision. See Tax Analysts v. Internal Revenue Serv., 294 F.3d 71, 76 (D.C. Cir. 2002).  Information is not protected by the deliberative process privilege unless it is "predecisional" and "deliberative," and an agency may not use Exemption 5 to "shield documents that simply state or explain a decision the government has already made or protect information that is purely factual." In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997).

Here, BOP claimed this exemption on the basis of the deliberative process privilege for one document, which was a draft copy of the Notice to Inmate of Transfer to Communication

10

Management Unit form.[8]  Exh. No. 8 at p. 5.  Specifically, BOP cited Exemption 5 because the draft record is part of the internal process by which the BOP generates a final version of documents, the disclosure of which would reveal the thought processes and preliminary opinions of the analysts conducting the assessments.  Tufte Decl. § 13.  Accordingly, the Court should uphold the BOP's use of Exemption 5 on this material.

**2.      BOP Properly Invoked Exemption (b)(7)(C).**

The BOP properly invoked Exemption (b)(7)(C) to protect third parties listed in correspondence to Plaintiff.  FOIA exemption 7(C) applies to information "compiled for law enforcement purposes," the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Here, due to the sophisticated methods of inmates' misuse and abuse of correspondence, especially those inmates identified and located in the CMU, the protection of the third parties named in inmate correspondence that could be used to circumvent BOP safety procedures to protect the public is far more significant than an inmate's desire to receive all correspondence from third party individuals.  Exh. No. 8 at p. 2.  U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989) (requiring the court to "balance the public interest in disclosure against the interest Congress intended [exemption (b)(7)(C) ] to protect"); Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C.Cir.1993).  More specifically, where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish

---

[8] The final signed copy of the Notice  to Inmate of Transfer to Communication Management Unit form was provided to Plaintiff in his June 2, 2009, FOIA request. Exh. No. 8 at p. 5.

more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.  Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004).  Accordingly, the Court should uphold the BOP's use of this exemption to the materials described herein.

**3.      The Agency Properly Applied Exemption 7(E).**

The FOIA does not apply to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

Here, the BOP withheld inmate monitoring intelligence information under Exemption 7(E), consistent with "administrative and operational guidelines and procedures, which assists the Bureau in investigations, monitoring prisoners, the flow of prisoner correspondence, and aid in accurately assessing prisoners' status.  Specifically, this exemption "was utilized to protect the law enforcement intelligence analysts surveillance techniques" and disclosure of such information could assist prisoners in evading communication monitoring techniques employed by intelligence analysts.  Tufte Decl. ¶ 13.  Accordingly, this exemption was properly applied to all these withholdings.

**4.      The Agency Properly Applied Exemption 7(F).**

The FOIA does not apply to matters that are:

> (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (F) could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. § 552(b)(7)(F).

This exemption may be invoked "to protect any individual reasonably at risk of harm." Miller v. United States Dep't of Justice, 562 F. Supp. 2d 82, 124 (D.D.C. 2008) (internal quotation marks omitted). Unlike Exemption 7(C), Exemption 7(F) does not require a balancing test. Shores v. FBI, 185 F. Supp. 2d 77, 85 (D.D.C. 2002). Exemption 7(F) applies only upon a determination that "there is some nexus between disclosure and possible harm." Miller, 562 F. Supp. 2d at ---, 2008 WL 2544659, at *27. "Within limits, the Court defers to the agency's assessment of danger." Id.

Here, the BOP withheld information under Exemption 7(F) due to the complexity and sophistication of inmates' ability to misuse and abuse communication methods while incarcerated. Tufte Decl. ¶ 13. Release of ingoing and outgoing inmate correspondence and intelligence analyst notes could "facilitate criminal activity thus jeopardizing the lives of inmate[s] and the public by hindering [the Bureau's] ability to monitor criminal activity and maintain security, safety. . ." Tufte Decl. ¶ 13, Exh. No. 8 at pp. 5-7.

### E.   BOP Released All Reasonably Segregable Information From the Records.

Under the FOIA, if a record contains information that is exempt from disclosure, any non-exempt information that is "reasonably segregable" must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records that are "inextricably intertwined with exempt portions" do not need to be disclosed. Mead Data Ctr., 566 F.2d at 260. To establish that all reasonably segregable, non-exempt information has been disclosed, an agency is not required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the agency show, "with reasonable specificity," that the information it has withheld cannot be further segregated. Armstrong v. Executive Office of the President, 97

13

F.3d 575, 578-79 (D.C. Cir. 1996); see also Mead Data Ctr., 566 F.2d at 261 n.55 (noting that an agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content").

BOP has established, with reasonable specificity that all reasonably segregable, non-exempt information has been released to Plaintiff.  In the course of processing all documents relating to Plaintiff's request, BOP's FOIA officer conducted a review of the documents to ensure that redactions were made only when material fell within one of the FOIA exemptions and only when disclosure would result in foreseeable harm to an interest protected by the exemption.  Tufte Decl. ¶ 8.  When applying redactions, BOP identified and released all portions of documents that were nonexempt and reasonably segregable from the exempt material to ensure that the maximum amount of information was released. Tufte Decl. ¶ 8, 13.

Based upon the BOP's statements regarding segregability in the Tufte declaration, as well as the descriptions in the Vaughn index, this Court should find that all reasonably segregable, non-exempt material that could be released to Plaintiff have been released.

**F.      Summary Judgment is Appropriate on Plaintiff's Privacy Act Claims**

The first nine counts[9] of Plaintiff's complaint allege that the BOP violated the Privacy Act, 5 U.S.C. §§ 552a(e)(5) and (g)(1)(C), by failing to maintain accurate records and by failing to amend the inaccurate records in violation of 5 U.S.C. §§ 552a(d), (g)(1)(A) and (g)(2)(A).  See Compl.,

---

[9] On July 26, 2010, Plaintiff requested dismissal, without objection, of Counts three (3) and five (5) of his Complaint.  Dk. Entry No. 46.  On September 28, 2010, this Court granted Plaintiff's request for dismissal of those counts (Dk. Entry No. 54), and therefore, Defendant will not address those counts in this memorandum.

Counts 1-9.

Plaintiff's claims under the Privacy Act must fail because the BOP's inmate records system have been properly exempted from the civil remedy provisions of the Privacy Act. The BOP has no duty to amend, upon request, an allegedly inaccurate record. Nor may a plaintiff pursue a claim for damages against the BOP under the Privacy Act.

5 U.S.C. § 552a(j), states in pertinent part:

> General Exemptions. —The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553 (b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (I) if the system of records is — * * maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision. (Emphasis added).

Exercising the authority granted by subsection (j), the BOP exempted its system of inmate records from the access and amendment provisions of the Privacy Act. See 28 C.F.R. § 16.97(a); (b)(3) and (9); White v. United States Probation Office, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (per curiam) (concluding that the Privacy Act's amendment provision does not cover amendment of a PSI); Risley v. Hawk, 108 F.3d 1396, 1397 (D.C. Cir.1997) (per curiam) (denying injunctive relief on the ground that regulations exempt BOP records, including allegedly false medical records, from amendment provision of Privacy Act); Sellers v. Bureau of Prisons, 959 F.2d at 309 (upholding

15

district court's dismissal of claim for amendment of presentence investigation report under § 552(d)); Jennings v. Federal Bureau of Prisons, 657 F.Supp. 24 65, 71 (D. D.C. 2009); Martinez v. Bureau of Prisons, 444 F.3d 620, 624 (D.C.Cir. 2006) (upholding district court's dismissal of claims against BOP because Inmate Central Record System exempt from the accuracy provisions of the Privacy Act, 5 U.S.C. § 552a(e)(5)); Scaff-Martinez v. Fed. Bureau of Prisons, 160 Fed. Appx. 955, 956 (11th Cir. 2005) (per curiam) (upholding dismissal of Privacy Act claims for monetary damages because, pursuant to 28 C.F.R. § 16.97(a) and (i), inmate records are exempt from 5 U.S.C. § 552a(d), (e)(5), and (g)); Collins y. Fed. Bureau of Prisons, No. 5:06cv129-DCB-MTP, 2007 WL 2433967, at *3 (S.D. Miss. Aug.2, 2007) (holding that plaintiff is not entitled to monetary or injunctive relief on Privacy Act claim challenging accuracy of records maintained in BOP's Central Inmate Record System); Djenasevic v. Executive United States Attorney 's Office, 579 F. Supp. 2d 129, 135-36 (D. D.C. 2008).

Because the BOP 's Inmate Central Record System is exempt from the requirements of 5 U.S.C. § 552a(g), 28 C.F.R. § 16.97, Plaintiff is not entitled to have his records amended, even assuming, arguendo, that he could demonstrate that there was any inaccuracy in the records.  As the Inmate Central Records System is exempt, the Court should dismiss all of Plaintiff's claims under the Privacy Act.

### G.     Plaintiff's Claims Regarding His Classification Should Be Dismissed

The final two counts of Plaintiff's complaint purport to assert claims of a violation of the United States Constitution against the Bureau of Prisons.  See Compl., Counts X and XI.  While Plaintiff's claim regarding his classification is based on a false premise — the BOP used information

from the draft PSR in making its classification decisions,[10] his claim should be dismissed for two separate reasons.  First, the Court lacks subject matter jurisdiction to review his claim, and second, the Court should not intrude on the BOP's discretion regarding the appropriate custody of an inmate.

### 1.   The Court Lacks Subject Matter Jurisdiction To Review Plaintiff's Detention

Plaintiff purports to assert the claims in Counts X and XI against the Bureau of Prisons under the rationale of Bivens v. Six Unknown Agents, 403 U.S. 388 (1971).  But the Supreme Court has held that a Bivens action is unavailable against federal agencies.  See Federal Deposit Insurance Corporation v. Meyer, 510 U.S. 471, 484-86 (1994).  As a sovereign the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  United States v. Testan, 424 U.S. 392, 399 (1976) (internal quotations omitted).  Waivers of sovereign immunity "must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires."  United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992) (internal quotations, alterations, and citations omitted); see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) ("Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity . . .   The terms of consent to be sued may not be inferred, but must be unequivocally expressed." (internal quotations and citations omitted)).

---

[10] As the Declaration of David Schiavone ("Schiavone Decl.") indicates, the BOP is not in possession of the draft PSR as alleged by Plaintiff, nor has the Bureau ever had possession of the draft PSR, and consequently did not use information from a draft PSR in the classification of Plaintiff or to determine any programming needs of Plaintiff.   Schiavone Decl. ¶¶ 5 and 6.  Moreover, the Bureau identified Plaintiff as an offender with a history of/or nexus to international terrorism based on Plaintiff's own admissions, other information contained in the PSR adopted by Plaintiff's sentencing court, and website research on the Foreign Terrorist Organization ("FTO") Abu Zubair.  Schiavone Decl. ¶ 7.

As noted above, the United States has not waived its sovereign immunity for constitutional tort suits.  See McLean v. United States, 566 F.3d 391, 400 (4th Cir., 2009) (citing and relying on Martinez v. Winner, 771 F.2d 424, 442 (10th Cir.1985)).  While the Administrative Procedures Act ("APA") ordinarily supplies the requisite waiver of the United States' sovereign immunity from suit and permits federal court review of final agency actions' when the relief sought is other than money damages and the plaintiff has stated a claim "that an agency or an officer or employee thereof acted or failed to act in an official capacity. . ." 5 U.S.C.A. § 702, the APA is unavailable to Plaintiff. (Imprisonment of a convicted person is authorized by 18 U.S.C. §3621, and the Bureau is empowered to "designate the place of the prisoner's imprisonment." 18 U.S.C. §3621(b)).  Section 3621 is the initial section of Subchapter C of Title 18, the concluding section of which precludes resort to the APA to review "the making of any determination, decision, or order under this subchapter." 18 U.S.C. §3625.

Accordingly, this Court lacks subject matter jurisdiction to review the BOP 's decision regarding Plaintiff's classification or transfer.  Califano v. Sanders, 430 U.S. 99, 105 (1977); Lee v. United States Citizenship and Immigration Services, 592 F.3d 612, 618-19 (4th Cir. 2010).

> **2.     Even If This Court Had Subject Matter Jurisdiction, Plaintiff's Constitutional Claims Should Be Dismissed**

**Due Process**

To invoke the protections of the Due Process Clause, a prisoner must have a protected liberty interest at stake.  The Supreme Court recognized a due process liberty interest at stake when a prisoner's reclassification imposed an "atypical and significant hardship." Wilkinson v. Austin, 545 U.S. 209, 223 (2005).

18

Plaintiff further complains that because of Plaintiff's designation as an "offender with a history of/or nexus to international terrorism" (Schiavone Decl. ¶ 7), BOP has imposed "harsh" and "atypical restrictions on his conditions of confinement relative to those of ordinary prisoners, including limitations on telephone use; a total ban on physical contact with his family [ ] total sequestration from the general population and the facilities; limitation on group prayer and a total ban on group religious study; and severe limitations on his educational and employment opportunities." Compl. ¶ 2, 148. These claims are without merit.

It is well established that the Attorney General is assigned discretion to designate the institution of an inmate's confinement. Moody v. Daggett, 429 U.S. 78, 88 (1976); see also Ledesma v. U.S., 445 F.2d 1323 (5th Cir. 1971); Ange v. Paderick, 521 F.2d 1066, 1068 (4th Cir. 1975); Lyons v. Clark, 694 F. Supp. 184, 186 (E.D. Va. 1988), affd, 887 F.2d 1080 (4th Cir. 1989); US. v. Sackinger, 704 F.2d 29 (2nd Cir. 1983). This principle has been established by Supreme Court decisions. In Meacham v. Fano, 427 U.S. 215 (1976), the Court held:

> The * * * decision to assign a convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another* * *. Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another * *

Id. at 224-225; see also Olie y Wakinekona, 461 U.S. 238, 249. Further, the Court held:

> That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

Meacham, 427 U.S. at 225. Pursuant to 18 U.S.C. §.3621(b), the BOP may transfer a "prisoner from one penal or correctional facility to another." Id. In addition, the BOP's regulations concerning

classification, designation, and transfer do not limit the agency's discretion so as to create a legitimate expectation that a prisoner will be assigned to a particular facility.  Mitchell v. Hicks, 614 F.2d 1016, 1018 (5th Cir. 1980); Beshaw v. Fenton, 635 F.2d 239 (3rd 1980); Miller v. Henman, 804 F.2d 421 (7th Cir. 1986).

Here, Plaintiff's classification was based on his criminal history and behavior while in prison. According to Bureau records, Plaintiff has had significant communications and associations with Lashkar-e Tayyiba (LT) (Army of the the Righteous), a group designated as an FTO by the Department of State. (Schiavone Decl. ¶ 7).  In addition, Plaintiff's PSR, adopted by the Court at sentencing included admissions by Plaintiff to training and fighting with a group in Bosnia known as "Abu Zubair", which is known to associate with al-Queda, and identified FTO. (Schiavone Decl. ¶ 7).  Based upon the information known to BOP, it determined the most suitable BOP facility to designate the Plaintiff that meet his programming needs. (Schiavone Decl. ¶ 9).

Moreover, Plaintiff's housing classification is not "atypical and significant hardships" of prison life.  Sylvester v. Cain, 311 F. App'x 733, 735 (5th Cir. 2009) (holding that prisoner's complaint regarding a change in job and housing classification did not implicate a protected liberty interest and failed to state a claim for which relief could be granted).  Even if BOP determined that Plaintiff should be monitored more closely because of his history of/or nexus to international terrorism,  being classified as described, and its resulting consequences of limited privileges and closer monitoring, as with any other security classification, is not outside what a prisoner "may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Fraise v. Terhune, 283 F.3d 506, 522 (3rd Cir. 2002) (citations omitted); see Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) (prison officials have discretion over prisoner classifications

and prisoners have no legitimate due process concerns in them). Furthermore, the protections afforded by the Due Process Clause do not extend to "every change in the conditions of confinement" which are adverse to a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir.1997).

In addition, those extreme conditions, which are atypical and cause significant hardship are not present here. In this case, Plaintiff has not demonstrated that his move from a less restrictive to a more restrictive unit was an atypical and significant hardship. In addition, there is no evidence that the change in the nature of Petitioner's confinement affected the length of his confinement.

Moreover, it is well established that a prisoner does not have a due process interest in his assignment to a particular institution, including one closer to his family. See generally, Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (inmate has no justifiable expectation that he will be incarcerated in any particular prison or state); Davis v. Carlson, 837 F.2d 1318, 1319 (5th Cir. 1988) (prisoner has no right to be transferred to facility closer to family).

In sum, as the Plaintiff did not and does not have a right to be confined in any particular institution and since the Plaintiff is not subjected to an "atypical and significant hardship * * * in relation to the ordinary incidents of prison life," Sandin v. Conner, 515 U.S. 472 (1995), as a result of his transfer to a higher security institution, the Due Process Clause is not implicated by his transfer. Nor may Plaintiff challenge the BOP's classification of him as a "terrorist inmate." Inmate classification is a procedure by which, among other things, the BOP determines where a particular inmate should be housed. Such classification is authorized — indeed compelled — by statute. Title 18 U.S.C. § 4081 requires:

> The Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the

21

offenses committed, the character and mental condition of the prisoner, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the person committed to such institutions.

It is well settled that this classification procedure is within the discretion of the Attorney General as delegated to the Director of the BOP.  See 18 U.S.C. § 4082(b), 28 C.F.R. § 0.96; see also, e.g., Peck v. Hoff, 660 F.2d 371 (8th Cir. 1981).

"Federal courts are extremely reluctant to limit the freedom of prison officials to classify prisoners as they in their broad discretion determine appropriate." McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir. 1975); see Moody v. Daggett, 429 U.S. 78(1976); Meachum v. Fano, 427 U.S. 215 (1976).  As such, Plaintiff has failed to state a viable Due Process claim.  Accordingly, Plaintiff does not state a cognizable due process claim.

**Freedom to Associate**

Plaintiff complains that forcing him "to visit with his family separated from them by a concrete wall, peering through a window of glass and bars, and audible only through a telephone, impinges on his ability to communicate and associate with them."  Compl. ¶ 107.  This argument lacks merit.

The objective of imprisonment is confinement.  Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner.  An inmate does not retain rights inconsistent with proper incarceration. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125, 132 (1977) (Prison associations may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, whether through group meetings or otherwise, possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment.); Shaw v.

22

Murphy, 532 U.S. 223 (2001) (Prisoners' constitutional rights are more limited in scope than the constitutional rights held by individuals in society at large, and, some First Amendment rights are simply inconsistent with the corrections system's "legitimate penological objectives) (quoting Pell v. Procunier, 417 U.S. 817 (1974).  The Supreme Court has established, freedom of association is among the rights least compatible with incarceration, and some curtailment of that freedom must be expected in the prison context.  Jones, 433 U.S. at 125-126; Hewitt v. Helms, 459 U.S. 460 (1983).

Moreover, prison administrators must be able to reasonably exercised their judgment as to the appropriate means of furthering penological goals. Overton v. Bazzetta, 539 U.S. 126 (2003) (legitimate penological objectives do noot violate substantive due process or free association guarantee of the First Amendment).

Accordingly, Plaintiff's constitutional claims lack legal merit, and the Court should enter an Order dismissing Counts X and XI.

23

## **CONCLUSION**

For all the foregoing reasons, the Court should dismiss Plaintiff's complaint and/or grant

Defendant's Motion for Summary Judgment in Defendant's favor.


Dated: June 1, 2012              Respectfully submitted,

                                 RONALD C. MACHEN JR.
                                 UNITED STATES ATTORNEY
                                 D.C. BAR NUMBER 447889

                                 DANIEL F. VAN HORN, D.C. Bar # 924092
                                 Acting Civil Chief


                          By:    _____/s/_____
                                 RHONDA L. CAMPBELL, D.C. Bar No. 462402
                                 Assistant United States Attorney
                                 Civil Division
                                 555 4th Street, N.W.
                                 Washington, D.C.  20530
                                 (202) 514-9519
                                 Rhonda.campbell@usdoj.gov

                                 Counsel for Defendant United States

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RANDALL ROYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:10-cv-01996 (RCL)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Upon consideration of Defendant's Motion to Dismiss and for Summary Judgment and

Memorandum in Support, it is hereby

**ORDERED** that Defendant's Motion is GRANTED;

**ORDERED** that Plaintiff's Complaint is dismissed with prejudice.

Dated this _____ day of _____, 2012.

_____
**ROYCE C. LAMBERTH**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
  **FOR THE DISTRICT OF COLUMBIA**

## CERTIFICATE OF SERVICE

I certify, on this 1ST day of June 2012, that the foregoing Motion was served upon Plaintiff, by the Electronic Court Filing system, and by first-class mail, postage prepaid, addressed to:

RANDALL TODD ROYER
R46812-083
FLORENCE ADMAX
U.S. PENITENTIARY
Inmate Mail/Parcels
PO BOX 8500
FLORENCE, CO 81226

Pro Se Plaintiff

/s/
RHONDA L. CAMPBELL
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-9519